## J. W. CAKE ET AL. v. H. L. CAKE ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHUMBERLAND COUNTY.

Argued May 27, 1889—Decided June 28, 1889.

(*a*) A mortgage, by a clerical error, described certain lots conveyed as in block 17 instead of in block 7. The description of the lots, both as to boundaries and improvements, could apply only to lots in block 7. After the mortgagor died, a decree re-forming the mortgage was obtained by bill in equity, all the heirs being made parties.

1. In such case, whether notice of the proceeding in equity to an heir as an heir did or did not bind him as a judgment creditor was immaterial, for the mortgage, as to an heir familiar with the property for years and whom the misdescription could not deceive, was a valid conveyance without re-formation.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 94 July Term 1888, Sup. Ct.; court below, No. 6 May Term 1888, C. P.

On February 6, 1888, an action of ejectment was begun by Henry L. Cake, A. H. Stone and David Taggart, trustees of the First National Bank of Northumberland against Joseph W. Cake, Jr., Joseph R. Leisenring, John Poff, Robert Jones, Henry S. Neff, Samuel Lugar and Isaac Slack, by filing a certified record of the proceeding had before a justice of the peace to obtain possession of certain real estate in the borough of Sunbury, Pa., after a sheriff's sale thereof to the plaintiffs. Declaration in ejectment filed and issue.

At the trial on May 8, 1888, the facts appearing were in substance as follows:

On December 10, 1877, Joseph W. Cake, Sr., executed and delivered to the plaintiffs a mortgage, duly recorded, for $25,000, upon a number of lots in Cake's addition to Sunbury, including the lots in question which were described as follows: "Also the following described pieces of property, being lots four (4), five (5), six (6), seven (7), eight (8), and nine (9), in block seventeen (17), fronting on Susquehanna avenue, each twenty-five (25) feet in width, and extending west each of that width one hundred and fifty (150) feet to Fort Augusta avenue, upon which said lots are twelve (12) two and a half (2½) story frame dwelling houses, covered with slate and metal roofs with one story back kitchen attached."

On May 9, 1878, the Northumberland County National Bank for the use of W. H. M. Oram, receiver of said bank, obtained a judgment against the said Joseph W. Cake, Sr., for the sum of $4,588.12, which judgment was assigned to Joseph W. Cake, Jr., on March 19, 1881.

On June 1, 1879, Joseph W. Cake, Sr., died, intestate, and on July 10, 1882, the plaintiffs issued a scire facias on their mortgage, which was duly served. It was afterwards discovered that by a clerical mistake in the mortgage, the above-mentioned lots were stated to be in block 17, while in fact they were in block 7, when the plaintiffs discontinued the proceeding on the scire facias, and on March 10, 1884, filed a bill in equity to re-form the mortgage, making the administrator and all the heirs of Joseph W. Cake, Sr., parties defendant thereto, all of whom, including said Joseph W. Cake, Jr., were duly served. A rule was also issued and duly served upon him and them to file their plea, answer or demurrer within thirty days from the service of the rule. At the expiration of this time no plea, answer or demurrer having been filed to the bill of complaint, on September 9, 1884, a decree was made against the defendants, including the plaintiff in error, correcting the numbering of the block from 17 to 7.

An alias scire facias was then issued on the mortgage, judgment obtained June 29, 1886, a writ of levari facias issued and the property sold thereon to the plaintiffs on September 15, 1886.

Charge of Court below.

' Proceedings were then instituted before a justice to obtain possession when Joseph W. Cake, Jr., made affidavit that he claimed the property, not under the defendant, but by a different title, as follows : Prior to the judgment on the said mortgage, the lots in dispute were levied upon, condemned and sold by the sheriff on proceedings under the judgment which had been assigned to the said Joseph W. Cake, Jr., who became the purchaser and received the sheriff's deed therefor, dated May 14, 1886. The proceedings were then certified into the Court of Common Pleas.

The plaintiff offered in evidence the record of the mortgage, the proceedings on the writs of scire facias, and on the bill in equity.

Objected to, substantially, on the ground that the mortgage was not a lien on the property in suit; or, if it ever became so, it was after defendant Joseph W. Cake, Jr., had become the owner of the above judgment, without notice ; for the decree re-forming the mortgage had not been duly recorded in the recorder's office, and notice of the proceeding in equity to said Joseph W. Cake, Jr., as an heir, was not notice to him as a judgment creditor of the decedent.

By the court: Objection overruled; exceptions.[1] [2] [3]

The defendant offered the record of the proceedings on the judgment No. 889 June Term 1877, with the return of the sheriff's sale and deed finally made therein.

Objected to by the plaintiff, because the lien of the judgment was subsequent to the lien of the mortgage, and because the judgment in the alias scire facias related back to the date of the mortgage. .

By the court: Objection sustained ; exception.[4]

It was proved that Susquehanna avenue is the principal street in Cake's addition, and that lots in block 17 of the same number as those in suit, fronted on Railroad avenue and ran west 150 feet, to an alley not named in the plan, and had but one frame house built upon them when the mortgage was given.

At the conclusion of the case on the evidence, the court, ROCKEFELLER, P. J., charged the jury, inter alia, as follows : °

[The contention of the defendant is, that he had obtained a judgment against Joseph W. Cake, the mortgagor, entered

prior to the entry of this mortgage, to wit, on May 9, 1878. He offered in evidence the fact that, on May 9, 1878, about five months after the mortgage was executed by Joseph W. Cake, the Northumberland County National Bank, for the use of W. H. M. Oram, receiver, recovered a judgment for some $4,588.50 against Joseph W. Cake, the mortgagor, and that this judgment was assigned to him on March 19, 1881. He offered this in evidence, to be followed by a sale by the sheriff to him of the lots in dispute, contending that it ought to be received upon the ground that the re-formation of this mortgage did not take place until subsequent to the obtaining of this judgment by the Northumberland County National Bank and subsequently to its being assigned to him. He further contended that he had no notice at the time that this judgment was obtained, that there was an error or mistake in this mortgage. Now, gentlemen of the jury, that evidence was rejected. Whilst it is true that where there is an error in a mortgage and a mistake that would be corrected by the parties to it immediately upon discovery, yet that cannot affect an innocent judgment creditor who parted with his money without knowledge of the fact that there was a vice or a mistake in the mortgage. But in the case on hand, this mortgage was re-formed after the judgment had been obtained, and after it had been assigned to Joseph W. Cake, Jr., and after notice was given him by this bill in equity. It is true, he was only named in that bill in equity as an heir, or a legal representative of Joseph W. Cake, the mortgagor; but, notwithstanding the fact that notice was given to him simply in that character, we are of the opinion that he had a right and that it was his bounden duty, whilst this bill in equity was pending, to set up any defence he might have to the re-formation of this mortgage. He failed to do that. The result was that a decree was entered against him, which was binding upon him, and affected him with the re-formation of the mortgage, so that so far as his right under the judgment is concerned, he is to be treated with knowledge of it in the beginning. The decree stands until it is reversed, and so long as that record stands he is estopped from disputing it.] [5]

\* \* \* \* \* \* \* \*

[It is conceded and admitted that the plot of Caketown was

not recorded. The mortgage being the prior lien upon the lots in Caketown, it was the duty of a subsequent incumbrancer before he parted with his money to go upon the ground and examine for himself the description of the lots given in the mortgage. Had this been done, it would have been seen from the adjoiners called for in the mortgage, and the description of the buildings called for, twelve two and one half story frame dwelling houses with slate and metal roofs, with one story brick kitchen attached, that they were located in block No. 7, and that neither the building on block No. 17, nor the adjoiners, would answer the description in the mortgage. Thus he would have seen that the lots in dispute were covered by the mortgage. In the absence of a recorded plot of Caketown, it was the duty of a junior incumbrancer to go upon the ground and examine. Hence we instruct you to find in favor of the plaintiffs the lands that are described in the declaration filed, if you believe the uncontradicted evidence of the plaintiffs.] [6]

The jury returned a verdict in favor of the plaintiffs for the lands in suit and for $525 as damages for the unlawful detention thereof, and judgment was entered on the verdict. Thereupon the defendants took this writ, assigning as error:

1–3. The admission of the plaintiffs' offers.[1 to 3]

4. The refusal of the defendants' offer.[4]

5, 6. The parts of the charge included in [  ] [5 6]

*Mr. George B. Reimensnyder* (with him *Mr. L. H. Kase*), for the plaintiffs in error.

*Mr. S. P. Wolverton,* for the defendants in error.

PER CURIAM:

There is no merit in the case of the defendants below (plaintiffs in error). The sale under the mortgage passed a good title to the plaintiffs for the premises in dispute. It is true there was an admitted error in the description of the property as contained in the mortgage. It describes the lots in question as part of block No. 17, when in point of fact they formed a portion of block No. 7. This error was not discovered until after

a scire facias had been issued on the mortgage. A bill in equity was then filed to re-form that instrument. Notice of this proceeding was given to the administrator and heirs of the deceased mortgagor, and a decree was finally made re-forming the mortgage to the extent of altering the description contained therein, so far as the number of the block was concerned. It was changed from block No. 17 to block No. 7 to conform to the facts. Upon the mortgage so amended a sale was subsequently made by the sheriff and the title thus acquired was held by the plaintiffs below at the time of trial.

Prior to the decree of re-formation, J. W. Cake, Jr., defendant below, became the owner of a judgment recovered against the mortgaged premises. He was also an heir and was a party to the bill. He now alleges that even if he was bound by the decree as an heir, he is not bound as a judgment creditor; that notice to him in the one capacity does not bind him in the other. This distinction is somewhat refined. We need not discuss it, however, as we regard the mortgage as perfectly good without any re-formation. The misdescription of the block could have misled no one. The property was described as lots 4, 5, 6, 7, 8 and 9 in block No. 17, fronting on Susquehanna avenue, each 25 feet in width, and extending west each of that width, 150 feet to Fort Augusta avenue, upon which said lots are erected twelve two and a half story frame dwelling houses, etc., etc. All of this description is accurate excepting the number of the block, which, as before stated, was No. 7 instead of 17. Lots Nos. 4, 5, 6, 7, 8 and 9 in block No. 17 front on Railroad avenue, and run back to an alley not named on the plan. How this error could have deceived any one, least of all, J. W. Cake, one of the heirs, who knew all about it, and had resided within three squares of this block for years, passes comprehension. It is not necessary to consider the assignments in detail.

Judgment affirmed.

On October 14, 1889, a motion for a re-argument was refused.